16524

TEAL *ET AL.* v. TOWN OF CHESTERFIELD *ET AL.*
(66 S. E. (2d) 318)

2

*Messrs. Samuel Want, Sam Rogol* and *Leroy J. Want,* of Darlington, *for Appellants,*

*Messrs. Knight & Steele,* of Chesterfield, *for Respondents,*

July 25, 1951.

BAKER, Chief Justice.

This action, commenced May 26, 1950, was brought by way of contest of certain proceedings which had for their primary object the annexation of a certain area to the limits of the Town of Chesterfield. In certain of the proceedings, including the notice of election, there was incorporated in the papers, after a description of the area proposed to be annexed, a provision as follows:

"This partion (petition) is asking that a small area now in City limits just north of Thompson's Creek now owned by J. R. Rivers be excluded from the present city limits."

Although other questions were raised at various stages of the present action, the contentions of the appellant on this appeal relate solely to the effect of the inclusion of the above quoted exclusion provision in the annexation proceedings. The proceedings in question resulted in a special election being held on February 21st, 1950, with the following results:

The votes within the corporate limits, seventy-one in favor of annexation and seven against; the votes within the area sought to be annexed, for annexation twenty and against annexation, eleven.

The respondents demurred to the complaint and made a motion to strike certain portions of the complaint. The demurrer and motion were overruled by an order of Honorable J. Woodrow Lewis, Judge of the Fourth Judicial Cir-

cuit, dated August 17th, 1950. Subsequently, upon agreement of counsel, the matters in issue were presented before Judge Lewis upon the submission to the Court of all documents, exhibits and proceedings relating to the election.

By an order dated February 10th, 1951, the Circuit Judge adjudged the election proceedings as to the annexation of the territory in question to be valid. From this order the appellant appeals.

As stated by appellant's counsel, the only question presented on this appeal is whether the inclusion in the annexation proceedings of an admittedly abortive attempt to contract the present area of the town by a small area "just north of Thompson's Creek" invalidates the whole annexation proceeding.

The applicable statutory provision for the extension of the corporate limits of a town or city is Section 7230 of the Code of 1942, as amended by an Act passed in 1948, 45 Stat. at Large, p. 1974.

The controlling provisions of this annexation statute as applicable to this case are that, in order to initiate an annexation proceeding "a petition shall first be submitted to said (town or city) council by a majority of the freeholders of the territory which it is proposed to annex, accompanied by an adequate description thereof, praying that an election be ordered to see if such territory shall be included in said town"; if it is found that the petition has been signed as required, concurrent elections are required to be held in the territory proposed to be annexed and in the municipality on the question of the extension of the corporate limits "by annexation of the territory proposed to be annexed to the named municipality"; if each of the elections so required to be held results in a majority vote in favor of the annexation, the annexation shall then become effective.

There is a separate statutory provision relating to the reduction of the corporate limits of a municipality. Code

1942, Section 7232. This statutory provision is to the effect that a reduction of the corporate limits of a town may be effected by the presentation to the town council of a petition signed by a majority of the freeholders of the town asking for a reduction of the corporate limits, and by the holding of an election; and "should a majority of the qualified electors vote in favor of the release of the territory, then said council shall issue an ordinance declaring the territory no longer a portion of said town, * * *."

It will be observed from the foregoing that only the freeholders of the territory desiring to be annexed could petition the town council to order an election to determine if such territory shall be included and made a part of the town, whereas in the reduction of the corporate limits of a town, the freeholders within its corporate limits must sign the petition for an election thereabout.

At a time prior to February 6, 1950, eighty-one (81) freeholders within the territory described in the petition, petitioned the Council of the Town of Chesterfield that an election be ordered to see if the said territory shall be included in and made a part of the town. In the preparation of this petition, and following the description of the territory which it was desired to annex, the scrivener or some one directing him, apparently having conceived the unhappy thought of in the same proceeding ridding the town of a small area across a creek on the northern edge of the town, added after the description of the territory sought to be annexed, the paragraph hereinabove quoted with reference to the exclusion of such small area owned by J. R. Rivers.

This petition was presented to and favorably acted upon by the Council of the Town of Chesterfield on February 6, 1950. Omitting the preamble, the resolution passed by Council reads as follows: *"Now be it resolved,* by the Council of the Town of Chesterfield in meeting assembled that it declare that the Petition or duplicate petitions have met the requirements of the Statutory laws of the State of South Carolina

especially Section 7230, as amended, in that a majority of the free holders have petitioned for said election, the said Council does hereby declare that a mapority of the freeholders within the area described in the Petition and without the Town limits of the Town of Chesterfield have Petitioned this Council to order or have ordered an election under the Statutory laws of the State controlling annexation and that the Council does certify to the County Commissioners of Election that the requirements as to the Petitions have been met and that this Council authorizes that a Petition be prepared and presented to said Commissioners of Election for Chesterfield County requesting them to determine if the premises described in the Petition or duplicate Petitions hereto attached shall be annexed and added to and included within the incorporate limits of said Town."

Following the passage of this resolution, the Council of the Town of Chesterfield, that is, its Mayor and Aldermen, issued their certificate addressed to Chesterfield County Commissioners of Election, to the effect that they had checked the names signed to the petition against the tax records of Chesterfield County, and that said names constituted a majority of the freeholders of the territory sought to be annexed to and made a part of the Town of Chesterfield; and in a separate paragraph petitioned the County Election Commissioners to order an election to be held to determine if the territory described in the petition shall be included in the corporate limits of said town.

Pursuant to this certificate and request, the Commissioners of Election for Chesterfield County, on February 8, 1950, ordered only an election to determine if the town limits of Chesterfield shall be extended so as to include the territory described in the petition, and in describing such territory, but in a separate paragraph, carried the paragraph hereinbefore quoted as to the exclusion of a small area. This order of election also limited those who were eligible to vote therein to qualified electors living within the corporate limits of

the Town of Chesterfield, and qualified electors living within the territory proposed to be annexed, set the date for the election on Tuesday, February 21, 1950, and provided for separate voting places for those electors residing within the then corporate limits of the town, and those electors residing in the territory sought to be annexed.

The order of the election was more formal and more in detail than just above stated, and apparently the complete order was published as and for the Notice of the Election.

Of course the qualified electors residing in the territory sought to be annexed would have had no voice in determining if any area then in the corporate limits should be excluded, but an election on such question was not ordered nor held.

Following the publication of the notice of the election, certain freeholders and residents within the area proposed to be included in the corporate limits of the Town of Chesterfield, petitioned the Mayor and Aldermen of said Town, and the Commissioners of Election of Chesterfield County to postpone the holding of an election in the matter until they could qualify by registration for voting, but the election was held as originally ordered on February 21, 1950, with the results as already stated herein.

The ballot used in the election recites that "an election has been ordered to be held February 21st, 1950, to see if the corporate limits of the Town of Chesterfield shall be extended, *as advertised*. Those in favor of extension of the limits of the Town of Chesterfield *as advertised* will scratch No; those against the extension will scratch Yes." (Emphasis added.)

In an official meeting of the Town Council of the Town of Chesterfield on February 28, 1950, it was regularly declared "that henceforth the incorporate limits of the Town of Chesterfield, South Carolina are extended so as to include, annex and make a part of the said Town" the area sought to be annexed, describing same in detail according to the

description and boundaries set forth in the annexation petition, but again carrying the paragraph as to the exclusion of a small area.

The election having been held and having been regular in all respects, it cannot be said that the vote in favor of the annexation was not exactly what it purported to be; while some of the votes cast for or against annexation might have been to some extent influenced by the attempted exclusion, there is nothing in the record to justify the inference that the result of the election was materially affected by the attempted exclusion of a small area at a given point of the present muncipal boundaries.

As already stated, the vote for annexation in the territory proposed to be annexed was twenty to eleven, and in the municipality was seventy-one to seven. This overwhelming vote in favor of the annexation must be given some effect, and this effect must be held to be nothing less than a definite approval of the annexation, regardless of the attempted exclusion of a small area in the same proceedings.

We look to the substance of the matter, rather than to the form; and with nothing in the record to indicate any importance or significance in connection with the small area proposed to be excluded, we cannot conclude that the votes for annexation do not in law, as they clearly do in fact, point to overwhelming support for the annexation proposal.

While the attempted exclusion is set forth either in terms or by reference in most of the proceedings leading up to the election, the very general language in which the exclusion is couched and the inadequacy of the same to identify the extent or lines of the area to be excluded, leave no doubt in our minds that the voters generally were not influenced in their voting by the attempted excusion, but were concerned primarily, and most likely exclusively, with the proposed annexation.

It will be observed that in the ballot there is no indication of an attempted exclusion of the small area in question. While it is true that the ballot refers to the extension of the corporate limits of the Town "as advertised," and thus refers by indirection to the attempted exclusion of the small area in question, it is equally true that the statement in the ballot that the election is to be held to determine whether the corporate limits "shall be extended" shows that the attention of the voter was directed alone to the proposed extension of the town limits, which was duly advertised with the particularity required by law. There is nothing in the form of ballot to justify the inference that the voter was led to cast his vote on the additional question whether the municipal limits at a given point should also be contracted to a small extent.

We conclude that the election must be upheld to the extent that it relates to an extension of the municipal boundaries but with the limitation that the election shall not be deemed to relate to the contraction of the municipal limits to the extent of the small area hereinabove described. This of course will entail an amendment of the record filed with the Secretary of State to show the new boundaries of the municipality without reference to the attempted exclusion of the small area above referred to.

Accordingly, the exceptions upon which this case was heard are overruled, but with the limitation that the result of the election shall be deemed to be limited exclusively to the annexation of the additional territory above described, and that the attempted exclusion from the present municipal limits of the small area above described shall have no force or effect. The decree of the Circuit Court is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.